MARSH MENKEN & WEINGARDEN, PLLP
Attorneys for Plaintiff
81 Main Street, Suite 305
White Plains, New York 10601
Phone (914) 686-4456

Jury Demand:
Plaintiff Demands
A Jury In This
Action

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JANNA L. V. SAKSON,

              Plaintiff,

– against –

CONCORDIA COLLEGE - NEW YORK FOUNDATION, INC.,
d/b/a CONCORDIA COLLEGE NEW YORK,

              Defendant.

-------------------------------------------------------------------X

COMPLAINT

Civil Action No. 07-
07 CIV. 3709

JUDGE CONNER

Plaintiff JANNA L. V. SAKSON alleges for her complaint as follows:

INTRODUCTORY STATEMENT

1. This is a suit for damages arising out of defendant's policies and practices which resulted in violations of plaintiff's constitutional rights in the workplace. Defendant denied plaintiff the right to be free, in her employment, from discrimination based upon plaintiff's disability or perceived disability as proscribed by the Americans With Disabilities Act, and related federal and New York State law. The action also involves violation of the Family and Medical Leave Act.

2. As more fully set forth below, defendant denied plaintiff continued employment as an Assistant Professor of English at Concordia College: a) by denying plaintiff reasonable accommodations, including without limitation teaching assistance and time off, which would have permitted plaintiff to competently provide services; b) by withholding from plaintiff a new

two-year contract which, but for plaintiff's perceived disability, was promised her; and, c) by denying plaintiff the protections of the Family and Medical Leave Act by, without limitation, insisting that plaintiff go on full time disability rather than take Medical Leave.

## THE PARTIES

3. Plaintiff is a natural person who at all times relevant to the complaint was a female citizen of the Unites States and resided in Westchester County, State of New York.

4. Plaintiff was an "employee" of defendant Concordia College - New York Foundation, Inc. within the meaning of 29 U.S.C.A. s. 2611(2)(A) at all times relevant to this action.

5. Defendant Concordia College - New York Foundation, Inc., doing business as Concordia College New York ("Concordia"), is a Not For Profit corporation formed under the laws of the State of New York.

6. Concordia is a four year liberal arts college, part of the Concordia University system, and is located at 171 White Plains Road, Bronxville, NY 10708.

7. Concordia was an "employer" within the meaning of 29 U.S.C.A. s. 2611(4)(A) at all times relevant to this action.

8. On information and belief, Dr. Viji George (Dr. George") was at all times relevant to this action the President of Concordia, and was responsible for and involved in making the decisions and judgments discussed herein.

9. On information and belief, Sherry Fraser ("Fraser") was at all times relevant to this action a Dean of Concordia, and was responsible for and involved in making the decisions and judgments discussed herein.

10. On information and belief, John M. Bahr ("Bahr") was at all times relevant to this action a Dean of Concordia, and was responsible for and involved in making the decisions and judgments discussed herein.

11. On information and belief, Dr. Mandana Nakhai ("Dr. Nakhai") was at all times relevant to this action the plaintiff's direct supervisor, and was responsible for and involved in making the decisions and judgments discussed herein.

## JURISDICTION AND VENUE

12. This court has jurisdiction over this action under 42 U.S.C.A. s.s. 12101 et seq., under 28 U.S.C.A. s.s. 1331 and 1343(4), and under 29 U.S.C.A. s.s. 2617. Venue in this court is proper pursuant to 28 U.S.C.A. s. 1391(b) because defendant's offices are in this District.

## PROCEDURAL REQUIREMENTS

13. Plaintiff filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC on February 7, 2007 and received by plaintiff on February 15, 2007, a true and accurate copy of which is attached hereto as Exhibit "A."

## STATEMENT OF FACTS
## COMMON TO ALL CAUSES OF ACTION

14. Plaintiff began working at Concordia as an adjunct English professor in the fall of 2002, and continued through spring 2003.

15. In January 2004, plaintiff was hired as a full-time Assistant Professor for the remainder of the academic year.

16. Plaintiff's full-time position was renewed in July of 2004 through and including May of 2005.

17. In September 2004, plaintiff moved into subsidized faculty housing.

18. In July of 2005, plaintiff was given a one year contract for employment with Concordia as a full--time Assistant Professor through July 2006.

19. In or about fall of 2005 Concordia posted on its website an advertisement for the position plaintiff was then holding, regarding the 2006 and 2007 school years.

20. Plaintiff applied for this position.

21. Dr. Nakhai, the then chair of the Concordia English Department and, and plaintiff's immediate supervisor, and Bahr, Dean at the College, assured plaintiff that the position would be hers.

22. In fall 2005, as in the past year, plaintiff served on several Concordia faculty committees, and had been nominated to the position of Faculty Secretary in the spring of 2005.

23. The seat of Faculty Secretary is traditionally held by a respected member of the permanent faculty.

24. In fall 2005, plaintiff taught five classes at Concordia.

25. In fall 2005, plaintiff led a class/English major trip to Time Out New York magazine ("TONY"), and co-planned a study abroad trip (for spring 2006) to the British Isles. Plaintiff recruited most of the students for the TONY trip, and helped recruit students for the British Isles trip.

26. In fall 2005, an ob/gyn appointment confirmed a lump plaintiff had felt in her right breast. In the spring of 2005 plaintiff had had a similar lump biopsied.

27. On October 7, 2005, after she had arrived at Concordia for work, plaintiff left work and was admitted to the hospital with stomach pain.

28.    Plaintiff was hospitalized from October 7 through October 12, 2005, with what was later diagnosed as acute diverticulitis, resulting from moderate diverticulosis.

29.    On or about October 8, 2005, plaintiff notified Concordia that she'd been told by her doctor to take at least a week off of work.

30.    Plaintiff personally arranged for a qualified English teacher, and a former adjunct at Concordia, to teach many of the classes she was unable to teach at that time.

31.    On October 14, 2005, two days after being released from the hospital, a radiologist found a second lump in plaintiff's breast.

32.    Plaintiff returned to work on October 17, 2006.

33.    Immediately following her hospitalization, plaintiff developed a series of symptoms, including, but not limited to, swollen, painful joints (fingers, hips, knees), considerable weight loss, dizziness, severe fatigue, weakness walking (up stairs, in particular), weakness in her lower body and right arm, difficulty holding a pen and writing, poor coordination, a tremor, and lower abdominal pain.

34.    Between October 17, 2005 and April, 2006, plaintiff went through a series of doctors' appointments and medical tests, including, but not limited to, two core biopsies, a follow-up diagnostic appointment, a series of blood tests/workups, several GI appointments, a barium enema, a small bowel series, a colonoscopy, appointments with a rheumatologist, an appointment with a neurologist, several appointments with her primary care physician, and an MRI.

35.    During that period, plaintiff's doctors suspected several illnesses to be the cause of her symptoms, among them Crohn's Disease, colon polyps, colorectal cancer, breast cancer (both lumps were found to be fibrosis), ankyolosing spondylitis, and fibromyalgia..

36. After additional tests, doctors suspected multiple sclerosis, reactive arthritis, fibromyalgia, porphyria, ALS, and/or a muscle/nerve disorder to be involved.

37. Prior to being told she must go out and stay out on disability, plaintiff notified defendant, in advance and in accordance with all Concordia policies and procedures, of all of the above doctors appointments, tests, and required absences

38. At all times, when unable to cover a class due to the above appointments or symptoms, plaintiff timely notified her supervisor, Dr. Nakhai, and tried to find a substitute for the class or, if that wasn't possible, made alternate arrangements for her classes.

39. Whenever possible, plaintiff went to work before and/or after the appointments/tests.

40. At all times, plaintiff was available to her students, supervisor, and the administration of Concordia via e-mail, a common form of communication at Concordia.

41. In early November, Dr. Nakhai told plaintiff that Fraser, Academic Dean, had suggested plaintiff go on disability for the rest of the semester.

42. At the time of the suggestion referred to in paragraph 41, above, plaintiff wanted to, and was ready and able to, work and to complete all of the major requirements of her position with the small accommodation, thus far given by defendant, of permitting occasional and limited Medical Leave and other time off for doctors' visits and tests.

43. At and about the time of the suggestion referred to in paragraph 41, above, most of the questions plaintiff asked of Concordia regarding disability policies and procedures went unanswered.

44. Plaintiff chose not to take Concordia's suggestion and not to go on full time disability at that time.

45. At or near the time plaintiff made her decision, Dr. Nakhai stated that plaintiff's going on disability would not "be the best thing" for the department or the school.

46. At or near the time plaintiff made her decision, Dr. Nakhai stated that should plaintiff go on disability she would worry about plaintiff's career with Concordia and how going on disability would affect it.

47. Concordia's suggestion that plaintiff go on disability, juxtaposed with the stated impact such an action would have on plaintiff's career with Concordia, violated each and every statute raised as a cause of action herein.

48. Plaintiff specifically told Concordia, by way of Dr. Nakhai, that she wouldn't go on disability if it would jeopardize her career.

49. Dr. Nakhai responded that she understood plaintiff's concern and agreed that it might be a problem.

50. After plaintiff decided not to take Concordia's suggestion regarding full time disabililty, plaintiff notified Concordia, by way of Dr. Nakhai, that she was able to do her work, just more slowly than usual and for shorter consecutive periods of time.

51. Dr. Nakhai offered, as an accommodation, that plaintiff be given a student teaching assistant to help mark students' papers, but further stated that Fraser said that disability would be the preferred option because it would save the school money.

52. After plaintiff decided not to go on disability, she was told to contact a particular student to see if she would help plaintiff mark up student papers, and to tell the student that she'd be paid $10 per hour.

53. When plaintiff confirmed with defendant that the student had agreed to assist her, plaintiff was told that there was no budget allocated for the student assistant.

54. Plaintiff was told she may have to pay the student assistant out of her own pocket.

55. At that time plaintiff was told that, if she missed any more classes, she would have to pay any teacher/substitute out of her own pocket.

56. On information and belief, due apparently to her own pressing workload, the student assistant was not competent to handle the simple tasks she was given.

57. When plaintiff notified Concordia that the teaching assistant was not working out, and was, in fact, causing more stress, plaintiff was not offered any further assistance or accommodation.

58. In late November, 2005, plaintiff interviewed for the position she was then currently holding. There were seven people on the search committee: Dr. Nakhai; Kate Behr; Bahr; Fraser; Joan Adams; Kathryn Galchutt and Scott Ashmon. By all accounts, the interview went well.

59. At the interview for her own position, when plaintiff asked Bahr what she could or should do to improve her work and her contributions to the school, Bahr responded, "You're doing it."

60. On information and belief, two other people interviewed for the position.

61. Prior to the interview, plaintiff submitted a CV, cover letter, and a complete portfolio/dossier with recommendation letters and sample work.

62. In or about Mid-December, 2005, while continuing to suffer from the symptoms discussed above and remaining undiagnosed, plaintiff notified Concordia that it was likely that she would go on disability in the spring semester, though she would continue to do whatever she could to assist the school.

63. At that time and on many other occasions, plaintiff stated that she would like to continue as an advisor, faculty secretary, and committee member, and would do so without compensation.

64. On December 29, 2005, Dr. Nakhai asked plaintiff to call her at her home.

65. When plaintiff called Dr. Nakhai, Dr. Nakhai said that Concordia supported her decision to go on disability. During that telephone conversation, plaintiff asked if she could continue as faculty secretary, advisor, committee member, and if she could take only partial disability leave rather than full-time disability.

66. Plaintiff was told that she could not go on a partial disability schedule and would have to go on full-time disability.

67. In response to plaintiff's additional requests, plaintiff was told that:

   a) she would not be permitted to work a partial or pared down schedule;

   b) that she would not be permitted to return to teaching for the remainder of the semester, even if her doctor approved her return;

   c) that she would not be permitted to return to working at Concordia in some other capacity (e.g., developing curricula, working in Writing Center).

68. At that time plaintiff was further told that Fraser had said the "latest thing" was going on disability for the whole semester and that she would have to be on disability through the remainder of her contract.

69. Dr. Nakhai informed plaintiff that she could remain in her faculty housing apartment only until June.

70. Concordia unilaterally and without notice removed plaintiff from the committees on which she served.

71. Concordia unilaterally and without notice removed plaintiff as advisor and participant on the British Isles trip which plaintiff had helped plan and for which plaintiff had recruited participants.

72.     At that time plaintiff was told that her contract would not be renewed, and that they were hiring one of the other candidates to replace her.

73.     Prior to plaintiff's health issues as discussed herein, plaintiff had been told on several occasions that she was the leading candidate for the position and that she shouldn't worry, everything would work out. She was told that the interviewing process was a formality.

74.     At the time she was denied reappointment plaintiff was told that they were praying for her health and that they wished her well.

75.     On information and belief, Concordia did not fully follow its own hiring policies and procedures during the process of not renewing plaintiff's contract.

76.     On information and belief, Concordia did not renew plaintiff's contract due in whole or in part to plaintiff's disability or what they believed to be her disability.

**FIRST CAUSE OF ACTION**
Disability Discrimination in Violation of the
Americans with Disabilities Act of 1990, 42 U.S.C.A. s. 12101 et. seq.

77.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 76, above.

78.     Plaintiff's symptoms and conditions described above were a disability as defined under the relevant laws, and such conditions and symptoms substantially limited her ability to use her arms, hands and fingers for extended periods of time, or to concentrate and focus for extended periods of time.

79.     In the alternative, the record of plaintiff's symptoms and medical needs, and defendant's perception of such a disability, as set forth above, supports a claim of discrimination.

80.     Plaintiff, with appropriate accommodation, was capable of performing her job in a superior manner.

81. On information and belief, the accommodations requested by and denied plaintiff would not have been unduly burdensome to Concordia.

82. Plaintiff was not permitted to take short-term disability.

83. Plaintiff was not permitted to take long-term disability without negative job action.

84. Plaintiff was not permitted to work a limited or pared down schedule of classes.

85. Plaintiff was not permitted to remain on Concordia committees.

86. Plaintiff was unilaterally removed as advisor/participant in the British Isles program she had helped plan and recruit for.

87. Plaintiff was denied renewal of her teaching contract.

88. On information and belief, defendant's acts and omissions as set forth above were due in whole or in part to plaintiff's disability or to a record of such disability or to defendant's perception that she was disabled.

89. Plaintiff has been unable, despite extensive efforts, to find comparable employment.

90. As a proximate result of defendant's discrimination against plaintiff on the basis of her disability, or a record or a perception of disability, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, subsidized housing, deferred compensation, and other employment benefits.

91. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation by defendant.

92. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

93. The conduct of defendant was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
Violation of the Family and Medical Leave Act
29 U.S.C.A. s.s. 2601 et seq.

94. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 93 above.

95. Defendant's acts and omissions as set forth above constitute a violation or violations of the Family and Medical Leave Act.

96. Plaintiff has been unable, despite extensive efforts, to find comparable employment.

97. As a proximate result of defendant's discrimination against plaintiff on the basis of her exercise of rights under the FMLA, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, subsidized housing, deferred compensation, and other employment benefits.

98. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation by defendant.

99. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

## THIRD CAUSE OF ACTION
(Unlawful Discriminatory Practices - New York State Executive Law)

100. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 99, above.

101. On information and belief, by the acts alleged herein each of the defendant committed Unlawful Discriminatory Practices as defined in section 296 of the New York State Executive Law.

102. The acts alleged herein damaged plaintiff in an amount to be determined at trial.

103. The defendant's acts warrant the imposition of punitive damages and the granting of attorney's fees.

104. In addition to the damages discussed and described above, the acts alleged herein caused plaintiffs to suffer severe mental and emotional anguish, distress, pain and suffering.

WHEREFORE, plaintiff prays that this Court grant judgment to her containing the following relief:

1. An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

2. An order enjoining defendant from engaging in the wrongful practices alleged herein and/or reinstating plaintiff to her position;

3. An award of damages in an amount to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

4. An award of punitive damages;

5. An award of reasonable attorneys' fees and the costs of this action, including attorneys' fees for representation before the United States Equal Employment Opportunity Commission as required before commencing proceedings in this federal action;

6. Prejudgment interest; and,

7. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY**

Plaintiff hereby demands a jury for the trial of all causes in this action.

Dated: May 7, 2007
      White Plains, New York

                MARSH MENKEN & WEINGARDEN, PLLP
                Attorneys for Plaintiff

By: _____
                Mitchell I. Weingarden (MW0294)
                81 Main Street, Suite 305
                White Plains, New York 10601
                Phone (914) 686-4456
                Fax (914) 686-0168
                Email MWeingarden@MMWLaw.US

# Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone (212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625

Sean J. Oliveira
Investigator
Phone (212) 336-3760
Fax (212) 336-3790

February 7, 2006

Ms. Janna Viles Sakson
509 High Ridge Road
Stamford, CT 06905

Re:   **Sakson v. Concordia College New York, et al.**
       Charge No. *520-2006-03530*

Dear Ms. Sakson:

Please be advised that your allegations of discrimination have been assessed and Respondent's defenses examined pursuant to the Commission's Priority Charge Handling Procedures. In accordance with these procedures we focus our resources on those cases that are most likely to result in findings of violations of the laws we enforce. Our review of the evidence in your charge fails to indicate that additional investigation will result in our finding a violation.

You alleged that Concordia College New York et al ("Respondent") discriminated against you on the basis of your disability and/or perceived disability. You also allege that Respondent discriminated against you in violation of Title VII. More specifically, you allege that you were employed since August 2002 with Respondent as an English Professor and received positive feedback from students, colleagues and administrators. You allege that you began to develop serious health problems, kept your supervisors apprised of your situation and began to be treated differently by Respondent. You allege that you were told that it would save the school money if you went out on disability and that they were not set up for a situation like yours. You allege that you were urged to go out on disability but chose not to. You allege that Respondent offered you a student assistant, but that that assistant was inadequate. You allege that Respondent threatened to make you pay for the assistant. You allege that your symptoms worsened and your doctor advised you to go out on short-term disability. You allege that you went out on short-term disability and were told not to come back for that entire semester. You allege that you offered to perform advisory and committee work, but were turned down and told to vacate your family housing by the end of the semester. You allege that Respondent did not renew your employment.

Respondent denies all allegations. The Respondent alleges that your health issues began in 2004 and points out that they offered you a one year contract (as they had in the past) for the 2005-2006 school year. Respondent alleges that you were aware that the position you held was temporary due to Respondent's search for a full-time, tenure track professor for the English Department. Respondent alleges that you applied for this position. Respondent alleges that they did give you many accommodations, including your request for disability leave for the Spring

Semester. Respondent alleges that your correspondence from before your leave illustrates their supportive nature and amicable tone. Respondent alleges that it was only after you were notified that you had not been chosen for the full-time, tenure track professor position that you alleged they had discriminated against you. Respondent alleges that it had held some teaching assignments for you had you notified them you could return from your leave before the end of the semester, but you never notified them that you could return.

Therefore, it is very unlikely that EEOC would find a violation if it invested additional resources in this case and is terminating the administrative processing of this charge.

Your dismissal and Notice of Right to Sue is enclosed. This dismissal is final. If you wish to pursue the Title VII allegations you may do so by filing a lawsuit in Federal District Court within 90 days of your receipt of the attached dismissal.

Sincerely,

Sean Oliveira, Investigator
U.S. Equal Employment Opportunity Commission
New York District Office Staff

cc:  Michael I. Weingarden, Esq.
     Marsh menken & Weingarden, PLLC
     81 Main Street, Suite 305
     White Plains, NY 10601

EEOC Form 161 (3/98)         **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Janna Viles Sakson<br>509 High Ridge Road<br>Stamford, CT 06905 | From: | New York District Office - 520<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-03530 | Sean J. Oliveira,<br>Investigator | (212) 336-3760 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Spencer H. Lewis, Jr.,
Director                                                   (Date Mailed)

Enclosures(s)

cc:   **CONCORDIA COLLEGE NEW YORK**
      171 White Plains Road
      Bronxville, NY 10708

      James P. O'Brien, Esq.
      Nixon Peabody, LLP
      50 Jericho Quad., Suite 300
      Jericho, NY 11753

      Mitchell I. Weingarden, Esq.
      Marsh Menken & Weingarden pllc
      81 Main Street, Suite 305
      White Plains, NY 10601

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*